[No. 15192. Department One. July 24, 1919.]

OKANOGAN POWER & IRRIGATION COMPANY, *Appellant*, v. E. C. QUACKENBUSH *et al.*, *Respondents*.[1]

TAXATION (142)—SALE—WHO MAY PURCHASE—CERTIFICATES OF DELINQUENCY. Under Rem. Code, § 2334, making it a misdemeanor for any public officer to be beneficially interested in any contract or purchase made by him, it is against public policy for a county treasurer, while in office, to purchase tax certificates of delinquency to be issued by his office; and a tax foreclosure thereon will be set aside, notwithstanding final steps to procure title were not taken until after his term of office had expired.

SAME (140)—SALE—NOTICE—"RECORD" OWNER. Notwithstanding a tax certificate foreclosure may be maintained against the owner named on the tax rolls, the county treasurer must, by the express provision of Rem. Code, § 9260, notify the "record owner" of the property of the pending sale; "record owner" being employed in its usual and common meaning.

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered July 31, 1918, dismissing an action for equitable relief, tried to the court. Reversed.

*James B. Kinne,* for appellant.

*W. C. Gresham,* for respondents.

[1]Reported in 182 Pac. 618.

TOLMAN, J.—Appellant, in 1908, acquired title from the state of Washington to a tract of land in Okanogan county, and has ever since been the record owner thereof. Shortly after purchasing, it subdivided and platted the lands as the Brewster Orchard Tracts, filed the plat of record, and proceeded to establish an irrigation system as an appurtenance thereto. The irrigated tracts were placed on the market, and the particular tracts here involved were sold on contract to different purchasers. Only one of these contracts was placed of record. The contracts all provided, among other things, that the purchaser should pay all subsequently accruing taxes. In the course of time, each of these purchasers defaulted, the several contracts were forfeited, and appellant again entered into possession and proceeded to cultivate the lands. Respondent Quackenbush, who was then the county treasurer of Okanogan county, in December, 1916, procured a considerable sum of money for the purpose of purchasing delinquent tax certificates to be issued by and through his office, made up a list of the taxes which he wished to pay, and his office force, under his direction, issued a considerable number of certificates of delinquency in the name of one B. S. Ladd, a brother-in-law of Quackenbush. But it is an admitted fact in the case that these certificates so issued, including those affecting the tracts of land here involved, were at all times the property of Quackenbush, purchased with his money, wholly under his control, and he was the only person to gain or lose by the transaction. These certificates show the owners or reputed owners of the tracts involved to be the purchasers under the contracts hereinbefore referred to. And it appears that the tax rolls showed such contract holders to be the owners, though it is alleged, and there is considerable evidence in the case to the effect, that Quackenbush

actually knew, or well might have known, that appellant was the owner and in possession of each of the tracts.

After his term of office expired, Quackenbush delivered these certificates to the prosecuting attorney with directions to foreclose, and such proceedings were had as to result in a foreclosure and sale thereunder by the county treasurer who succeeded him in office. The regularity of these proceedings is not attacked, except only for the failure to give appellant notice of the sale according to the language of the statute, Rem. Code, § 9260, which requires county treasurers to give notice to the record owner of the pendency of the sale. Appellant was not a party to the foreclosure, and had no notice or knowledge of the issuance of the certificates, or of any of the steps taken to acquire title thereunder, until after the delivery of the treasurer's tax deeds to Quackenbush; but, upon ascertaining the facts, it tendered to the county treasurer and to Quackenbush a sum of money sufficient to pay all taxes, interest, and penalties due, and all costs incurred up to the time of the tender. The tender being refused, appellant brought these actions, which were consolidated below, to require the county treasurer to receive and accept the amount due for taxes upon the property, to satisfy the lien of said taxes, and to set aside the tax deeds and quiet its title. From a judgment denying the relief sought, this appeal is taken.

May a county treasurer, while in office and charged with the duties thereof, become the purchaser of certificates of delinquency to be issued by his office? We said in *Coughlin v. Holmes,* 53 Wash. 692, 102 Pac. 772:

"Furthermore, we are of the opinion that the judgment may be sustained upon the ground that the sale of the land by the county treasurer to himself or a

deputy in his office is against public policy, and therefore invalid.''

And the legislature has defined the public policy of this state by including in the criminal code the following:

"Every public officer who shall— . . .

"(2) Be beneficially interested, directly or indirectly, in any contract, sale, lease or purchase which may be made by, through or under the supervision of such officer, in whole or in part, or which may be made for the benefit of his office, or accept, directly or indirectly, any compensation, gratuity or reward from any other person beneficially interested therein . . .

"Shall be guilty of a gross misdemeanor, and any contract, sale, lease or purchase mentioned in subdivision 2 hereof shall be void." Rem. Code, § 2334.

It being against public policy for a public official to be beneficially interested in any contract, sale, lease, or purchase made through his office, it would seem almost too clear for argument that the acts complained of here come within the spirit, if not within the actual letter, of the prohibition. By the issuance of certificates of delinquency, the county sold its right to proceed against the property to collect the tax, contracted to repay the purchase money, with legal interest, if the certificates should prove to be void because of any irregularity of the taxing officers, and placed in the hands of the purchaser the instrument by which he might proceed in due course to procure title if the tax should not be paid. That the final steps in procuring title were not taken until after Quackenbush's term of office expired does not save the situation. If he must not buy the property at his own sale, he likewise may not initiate the proceedings, during his term, which will lead up to a purchase by him after his term has expired. We apprehend that it was the purpose of the legislature to forbid any public officer to in any

manner deal as an individual with the affairs of his office for the purpose of making a private profit. Such dealing is intolerable and cannot be permitted, directly or indirectly, immediately or remotely, and must be condemned wherever found, no matter what method be pursued.

While our views just stated dispose of the case, yet one other point, which has never been passed upon by this court, should be decided for the guidance of those charged with the duty or necessity of foreclosing certificates of delinquency. In Rem. Code, § 9260, relating to judgment and order of sale for taxes, is the provision:

"Provided, however, that before such sale shall be held, the county treasurer shall notify the record owner of such real estate of the pending sale, or in case of unknown owner shall post a notice of same in some public place at the county courthouse."

Nowhere else in the act are the words "record owner" used. Section 9254, Rem. Code, requires notice of the foreclosure suit to be served "upon the owner of the property described in such certificate." And we have frequently held that it was sufficient to name as defendant and serve with process the person in whose name the property appears on the tax rolls and who is named in the certificate as owner or reputed owner. See *Sparks v. Standard Lumber Co.,* 92 Wash. 584, 159 Pac. 812, and cases there cited. But notwithstanding the statutory provision that the suit may be maintained against the owner named in the certificate, who is the owner named on the tax rolls, the legislature, by the provision above quoted, has, in express terms, required a notice of sale to be given the record owner. In view of our recording act, there can be no doubt as to what is meant by the term record owner. And we think that, as the purpose of providing

for the issuance and foreclosure of certificates of delinquency is primarily to insure, if possible, the collection of the tax, and not to divest title except as a last resort, the legislature used the words ''record owner'' advisedly, with the purpose of making more certain the collection of the tax and reducing, so far as possible, the number of cases in which title would be divested. We can see no reason which will justify us in attempting to give the words ''record owner'' any other than their usual and common meaning.

The judgment appealed from is reversed, with directions to grant the relief prayed for.

HOLCOMB, C. J., MAIN, and MACKINTOSH, JJ., concur.