# JANUARY, 1920.

### GOODE HUNT v. STATE OF TEXAS.

#### No. 3260. Decided January 1, 1920.

#### (217 S. W., 1034.)

**1.—Tax Lien—Foreclosure—Notice to Owner.**

The "record owner" of the land, to whom the tax collector is required by law (Act of April 3, 1915, Laws, 34th Leg., p. 250) to mail notice of the amount of taxes due and unpaid, as a prerequisite to an action by the State to foreclose its lien therefor, means the owner of the title at the time of the notice, as disclosed by the public records of the county, not the record owner at the time such tax became delinquent. (Pp. 206, 207).

**2.—Statutory Construction—History of Enactment.**

That a pending bill, originally requiring notice of unpaid taxes to be given to the "delinquent taxpayer" as a prerequisite to foreclosure of the State's tax lien, was so amended before passage as to require, instead, such notice to the "record owner," shows that the latter term meant the present owner, not the former one against whom the tax was assessed and who was delinquent in the payment. (P. 207).

**3.—Statutory Construction.**

That the collector in making up the notice of the taxes due was directed to rely upon the delinquent tax records did not require him so to do beyond ascertaining the amounts delinquent. He was not thereby required to depend on them for the name of the "record owner" to whom he was required to give the notice, whose name was ascertainable from the record, who was the only person interested, and who was the necessary defendant in the foreclosure suit to which such notice was prerequisite. (P. 208).

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Cass County.

The State sued Hunt to foreclose a lien on land for delinquent taxes. Defendant had judgment which on appeal by the State was reversed and remanded (207 S. W., 636). Hunt thereupon obtained writ of error, the decision settling the case and involving construction of a statute.

*O'Neal & Allday,* for plaintiff in error.—By the words "record owner," as used in the statute under question is meant the present title holder of the land as disclosed by the Deed Records of the county where the land is situated. Turner v. Cross & Eddy, 83 Texas 223; 36 Cyc. 1135, 1136, 1138; Railway v. Mahaffey, 105 Texas, 394; Bank v. Ferguson, 192 S. W., 1088.

The caption, or title, of the Act under consideration provides for notice to the owner, and section 1 in the body of the Act provides for notice to the record owner, and construing both together the evident intention of the Legislature was that the notice must be mailed to the last record owner. And if a purchaser from the de-

linquent fails to record his deed, then, notice to his vendor will be binding on him. Schnitger v. Rankin, 192 Mo. 35; White v. Lumber Co., 240 Missouri, 13.

The original bill provided in its title and in the body of the bill that the notices must be mailed to the delinquent tax payers. The amendment changed this and provided in its title that the notice must be mailed to the owner, and in sec. 1, to record owner, and sec. 1, also provided that such notice must notify the owner or owners that unless they paid the taxes within ninety days from the date of such notice that the State would sue them and foreclose its constitutional lien on their lands. It is too clear for argument that the Legislature understood that under the provisions of the amendment the notices were to be mailed to the owners, the only interested parties.

Under the statute under consideration unless the notice is mailed to the address of the record owner, in due time, the court does not acquire jurisdiction over the land. In order for the court to acquire jurisdiction the notices must be mailed in due time and to the record owner, and the State when it files its petition must allege that notice was, in due time, mailed to the said record owner. State v. Seidell, 194 S. W., 1118.

*Elmer L. Lincoln,* County Attorney, for defendant in error.

The term, "record owner," as used in the Act referred to, means the record owner as shown by the tax records in the collector's office. Acts, 34th Leg., p. 250, Ch. 147, secs. 1, 2.

Sec. 2 provides that in making up these notices the tax collector shall rely upon the delinquent tax records of his office. These records give the name of the delinquent taxpayers, the person who rendered the property, the one in whose name it appears delinquent. He is the only person known to the collector, and, if he relies upon the delinquent tax records of his office in sending the notice, he must send it to the person whose name appears there. This person is, according to the collector's records, the "record owner." On the other hand, if he sends the notice to the owner according to the deed records, he must examine the deed records, first, to ascertain who the title owner is; he must then make, perhaps, outside inquiry to ascertain his correct address. In making these investigations he is not relying upon the delinquent tax records of his office.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The defendant in error, State of Texas, instituted this suit against plaintiff in error, Goode Hunt, to foreclose a tax lien on fifty acres of land in Cass County owned by plaintiff in error.

The proof showed that the taxes were delinquent for 1888 and 1893; that Bill Williams owned the land in 1888 and that Rachael

Williams owned same in 1893; that the delinquent tax records showed the name of Bill Williams as owner of the land in 1888 and the name of Rachael Williams as owner in 1893; that Goode Hunt acquired the title to the land from Bill Williams and Rachael Williams, by deed dated February 24, 1903, duly recorded in Cass County on March 6, 1903, and Goode Hunt has regularly paid all taxes on the land each year since 1903 and has continuously occupied it; that the tax collector in due time sent notices of the delinquency to Bill Williams and Rachael Williams but sent no notice to plaintiff in error; and, that there was no omission of any act essential to entitle the State to have the foreclosure it sought, unless notice to plaintiff in error was essential.

The trial court rendered judgment that the State take nothing, on the conclusion that notice by the tax collector to plaintiff in error, as the record owner of the land, was a condition precedent to the right of the State to bring and maintain the suit.

The Court of Civil Appeals was of the opinion that the law required the tax collector's notice to be sent to the owner as shown by the delinquent tax records, and therefore reversed the judgment of the trial court and remanded the cause, with instructions to ascertain the amount of taxes on the 50 acres unpaid for 1888 and 1893, together with interest, penalties and costs, and to render judgment in favor of the State foreclosing the tax lien.

We concur in the decision of the District Court and of the Court of Civil Appeals that the discharge by the tax collector of his duty to give notice to the proper party or parties was a pre-requisite to the right of the State to a foreclosure; and, the case presents the single question: To whom was notice from the tax collector required to be given by section 1 of the Act of the 34th Legislature, approved April 3, 1915, and found on page 250 of the General Laws?

The portion of the section which requires that the notice be given by the tax collector and which prescribes the contents of the notice reads:

"Not later than the first day of May, 1916, in all counties of less than 50,000 inhabitants, and not later than the first day of May, 1917, in all counties of more than 50,000 inhabitants, and not later than the first day of June in every year following thereafter, it shall be the duty of the Collector of Taxes in the various counties of this State to mail to the address of every record owner of any lands or lots situated in such counties, a notice showing the amount of taxes appearing delinquent or past due and unpaid against all such lands and lots according to the delinquent tax records of their respective counties on file in the office of the Tax Collector, and a duplicate of which shall also have been filed in the office of the Comptroller of Public Accounts of the State of

Texas and approved by such officer; such notice shall also contain a brief description of the lands or lots appearing delinquent, and various sums or amounts due against such lands or lots for each year they appear to be delinquent according to such records; . . . said notices or statements herein provided for shall also recite that unless the owner or owners of such lands or lots described therein shall pay to the tax collector the amount of taxes, interest, penalty and costs set forth in such notice within 90 days from date of notice, then, and in that event, the county or district attorney will institute suits not later than January 1, next, for the collection of such moneys, and for the foreclosure of the constitutional lien existing against such lands and lots.''

In our opinion, to give the ordinary signification to the words and to carry out the manifest intention of the Legislature, the words ''record owner'' in the above section must be construed to mean the owner of the title to the land, at the time of the notice, as disclosed by the public records of the county, which the law required to be kept.

It would seem certain that the Legislature did not mean the ''delinquent tax payer,'' when the Act refers to the ''record owner.'' For, the Act is an amendment of House Bill No. 40, which, as originally introduced, required in its caption and in its body the mailing of notice of the unpaid taxes to each ''delinquent tax payer.'' The Legislature could hardly have indicated more unmistakably that it did not intend for the notice to be sent to the ''delinquent tax payer'' than by refusing to enact the bill, when presented in such form as to provide for notice to the ''delinquent tax payer,'' and by sustituting therefor a requirement of notice to the ''record owner.''

Under the Act, payment of delinquent taxes was to be enforced by suit as a last resort. Before suit, the owner was to be notified of the charge on his land. The owner best entitled to this notice was a purchaser of land which had become delinquent by reason of the default, not of the purchaser but of one under whom he deraigned title. Not only does the Act provide for information to the owner, before suit, of the amount of the claim against his land and of the years of the delinquency, but it allows the owner ninety days, from date of the notice for investigation and for voluntary payment. It is quite inconceivable that the Legislature intended for notice to reach only the owner least entitled to notice, as would be the case if it were restricted to the owner, who was also the delinquent tax payer. It is no less inconceivable that the Legislature intended to allow the owner, who was himself delinquent, ninety days for investigation and voluntary payment, after notice, before the additional burden of costs was to be imposed, and to deny such benefit to the owner, free of personal fault, whose lands had become encumbered in the hands of a predecessor in title.

When suit becomes necessary, the State relies for its security on foreclosure of the constitutional lien on the land. The object of the foreclosure is to pass the title to a purchaser. The holder of the title is therefore the necessary party to the suit. We think the Act contemplates that the duplicate of the tax collector's notice, which he is required to furnish the county or district attorney, would ordinarily show the name and residence of this necessary party defendant to the State's suit to foreclose the tax lien. If this be impossible because the owner or his place of residence be unknown, the tax collector is required to give that information.

We do not think there is any conflict between the requirement of notice to the record owner and the provision in section 2 of the Act that in making up the notice the tax collector shall rely on the delinquent tax records approved by the Commissioners' Court and the State Comptroller. The tax collector is referred to the delinquent tax records for the contents of the notice; but, when the notice is made up from the delinquent tax records, it must be mailed to the address of the record owner, and it is the record owner who is allowed 90 days to discharge the lien on his land, as the notice in substance states.

It is common knowledge that much of the delinquent taxes accrued against former owners. Hence, in many instances notices to the delinquent tax payers would only reach former owners, and would produce no better results than in this case, where notices were sent to Bill Williams and Rachael Williams, who had been without interest in the land for over fourteen years, to the effect that if the *owner* of the land did not pay the taxes in ninety days, then suit would be brought by the State. Surely it was never purposed to notify one person that another had a certain time within which to make a payment, nor to make notice to one person a condition precedent to a suit to establish and foreclose a lien against another person's property. In this case, Goode Hunt was not only the owner of the fifty acres of land when the notice was mailed by the tax collector, but he was such owner according to the deed records in the office of the county clerk, he was such owner according to the current rolls forming part of the records in the office of the county tax collector, and he was such owner according to the current records in the office of the county tax assessor. The law conferred on Goode Hunt, as record owner of the land, the privilege of paying the taxes, interest, penalty, and costs, exclusive of any costs of suit, for ninety days from the date of the notice which it was the tax collector's duty to mail to his address. The undisputed evidence showed a failure on the part of the tax collector to perform his duty, and the trial court rendered the proper judgment. Therefore the judgment of the Court of Civil Appeals is reversed and that of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*