[Civ. No. 3440. Third Appellate District.—February 28, 1928.]

EDWARD BONE, Respondent, v. P. J. DWYER et al., Defendants; ELIZABETH L. DWYER, Appellant.

A. H. Carpenter for Appellant.

Foltz, Rendon & Wallace for Respondent.

FINCH, P. J.—July 20, 1922, the defendant P. J. Dwyer and Maria E. Lindahl entered into a written contract, by the terms of which the former agreed to buy and the latter to sell the real property in controversy in this action, subject to a mortgage indebtedness thereon of $1,400, for the sum of $1,100, of which sum $500 was paid in cash and the remainder was to be paid in monthly installments of $50 each. The contract was never recorded. At the same time Maria E. Lindahl signed and acknowledged a deed, dated July 15, 1922, purporting to convey the property to Dwyer, and left it in the custody of a real estate company. Dwyer paid three of such monthly installments and thereafter, "in the fall some time" of 1922, assigned all his "right, title and interest" in and to the contract and the property described therein to the plaintiff, in consideration of the plaintiff's payment to Dwyer of $650 and his promise to pay the remaining installments as they fell due and his assumption of the mortgage indebtedness. This assignment was indorsed on the back of the contract and was not recorded. The plaintiff paid Maria E. Lindahl such remaining installments and, in July, 1923, the aforesaid deed was delivered to him by the real estate company and he caused it to be recorded, believing at the time, according to his testimony, that it was a deed from Maria E. Lindahl to himself. October 10, 1923, Maria E. Lindahl executed another deed purporting to convey the same property to the plaintiff, and it was duly recorded on the following day.

At all times since the year 1903 P. J. Dwyer and Elizabeth L. Dwyer have been husband and wife, but they have not lived together as such since 1918. October 6, 1922, without applying for a divorce, Mrs. Dwyer commenced an action for permanent support and maintenance on the ground of desertion. The defendant therein answered the complaint

and the case went to trial October 9, 1923, and judgment therein was entered in favor of Mrs. Dwyer October 26, 1923, which judgment awarded her the property in controversy in this action. Bone was not a party to that action and it is not contended that the judgment therein is a bar to his maintenance of this action.

The complaint herein was filed October 19, 1923. It is in the usual short form of complaints to quiet title. The defendant P. J. Dwyer disclaimed any interest in the property. The defendant Elizabeth L. Dwyer filed an answer, denying the plaintiff's allegations of ownership, and a cross-complaint in the usual short form to quiet her title to the property. The plaintiff answered the cross-complaint, denying Mrs. Dwyer's alleged ownership and affirmatively alleging the aforesaid facts leading up to the execution of the deed from Maria E. Lindahl to himself. Judgment was entered in favor of the plaintiff and Mrs. Dwyer has appealed.

In a former trial of the action judgment was entered in favor of the plaintiff, but the judgment was reversed on appeal. (*Bone* v. *Dwyer,* 74 Cal. App. 363 [240 Pac. 796].) At the second trial the plaintiff testified and the court found that plaintiff "did not know nor have any information" that P. J. Dwyer and Elizabeth L. Dwyer were husband and wife until about October 10, 1923. No such testimony was given at the first trial. At the former trial the court found that the deed of July 15, 1922, was deposited with the real estate company with instructions to deliver it to Dwyer when "both parties to said deed joined in a request for the delivery thereof." There appeared to be no evidence, however, to support the finding that the deed was to be delivered only when both parties joined in a request therefor. In the second trial the defendant Elizabeth L. Dwyer called as a witness a member of the real estate company, who testified, relative to the deed of July 15, 1922: "They placed the deed in escrow with me until such time as they would wish to turn it over. . . . At the end of the payments, whenever she was satisfied that it was all correct, then the deed which they drew up and signed at that time was left with me, and I should give it either to them both 'in person, or to the one who brought a letter to that effect. . . . The parties would come together and ask for the paper in my possession, I was holding in escrow, . . . the deed—ask for the deed. Or if

in case they could not come together, one should write a letter just to let me know it was all right, and I would turn the deed over to him." It cannot be said that the foregoing evidence is insufficient to warrant the finding that the deed was to be delivered to "Dwyer when he . . . paid for said real property pursuant to said agreement, and both parties to said deed then and there joined in a request for the delivery thereof." ▉ The court found, on sufficient evidence, that after payment of the full purchase price of the property to Maria E. Lindahl she informed the real estate company "that she wished to convey said real property to plaintiff," but, instead of preparing a deed for that purpose, the said company "handed to plaintiff the deed dated July 15, 1922, . . . and plaintiff received the same believing that it was a conveyance of said real property from Maria E. Lindahl to himself, and so believing caused the same to be recorded; that the deed dated July 15, 1922, of said real property from Maria E. Lindahl to P. J. Dwyer was never delivered to said P. J. Dwyer nor to anyone for him." Since the deed was not to be delivered until the grantor requested the delivery thereof, her deposit thereof with the real estate company did not constitute a delivery in escrow, and the subsequent manual delivery of the instrument by the custodian thereof, without the grantor's request, was ineffective and inoperative. (9 Cal. Jur. 175; *Keys* v. *Meyers,* 147 Cal. 702 [83 Pac. 304].) That deed, therefore, may be dismissed from further consideration, and it follows that Maria E. Lindahl's deed of October 10, 1923, conveyed the legal title to the property to the plaintiff.

▉ In the opinion filed on the former appeal, referring to the effect under section 172a of the Civil Code of Dwyer's assignment to plaintiff, it is said: "Under the facts of this case, the wife, not having joined her husband in the execution of the transfer and conveyance, under the terms of the section to which we have referred, the right of the wife to maintain or defend her interest or title to the premises was left in the same condition as though the instrument had not been executed." Respondent relies on the additional proof made at the second trial to the effect that he had no knowledge of the marriage relation until after he had purchased and paid for the property. ▉ Section 172a contains the proviso "that the sole lease, contract, mortgage

or deed of the husband, holding the record title to community real property, to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid." Dwyer, however, did not hold the record title to the property. The term "record title" clearly means a title officially of record. (*Brooks* v. *Black*, 22 Colo. App. 49 [123 Pac. 131]; *Arnold* v. *Reed*, 162 Mass. 438 [38 N. E. 1132]; *Ex parte Connolley*, 168 Mass. 201 [46 N. E. 618]. See, also, *Hunt* v. *State*, 110 Tex. 204 [217 S. W. 1034; *Okanogan Power & Irr. Co.* v. *Quackenbush*, 107 Wash. 651 [5 A. L. R. 966, 182 Pac. 618].) The proviso under consideration is an exception to the general rule prescribed by section 172a and cannot be construed to include any case not fairly within its express terms. (*United States* v. *Dickson*, 15 Pet. (U. S.) 141 [10 L. Ed. 689]; Lewis' Sutherland on Statutory Construction, 2d ed., sec. 352; 23 Cal. Jur. 743; 25 R. C. L. 985.) Respondent relies on *Rice* v. *McCarthy*, 73 Cal. App. 655 [239 Pac. 56], but the meaning of the term "record title" is not considered in that case. The judgment therein was reversed on the ground that "the trial court erred in sustaining objections to evidence offered by appellant, in support of the facts pleaded by him by way of estoppel, and that it also erred in failing to make specific findings upon the facts so pleaded." While in that case the defendant alleged his want of knowledge of the marriage relation as one of the facts constituting an estoppel, it obviously was not such and, at page 662 of the opinion, it is said: "This proviso cannot be regarded as an application of the doctrine of equitable estoppel." Since the facts proved at the second trial do not bring the case within the terms of the proviso in question, plaintiff's want of knowledge that Dwyer was a married man is immaterial, and he is in no better position than he would be if the assignment to him from Dwyer had never been made.

The court found, on sufficient evidence, that Maria E. Lindahl consented to the assignment from Dwyer to the plaintiff and that the plaintiff thereafter paid her the remaining installments of the purchase price, amounting to $450. Thereafter she conveyed the property to him. The plaintiff took the property with knowledge of the contract between his vendor and Dwyer and therefore subject

to any legal rights which might be asserted under that contract. ▉ "So long as the legal title remains in the vendor it may be conveyed by him, and the conveyance will pass all his right in the land, including, as a general rule, the right in equity to receive the unpaid purchase money and enforce the vendor's lien therefor. . . . ▉ If the vendor's grantee is not entitled to protection as a *bona fide* purchaser for value, as where he takes with notice of the existing contract, he will take subject to the equitable rights of the purchaser, and may be compelled, at the suit of the purchaser, to perform the agreement by conveying the land, in the same manner and to the same extent as the vendor would have been liable to do had he not transferred the legal title." (27 R. C. L. 560; *Lucy* v. *Davis,* 163 Cal. 611 [126 Pac. 490]; *Day* v. *Cohn,* 65 Cal. 508 [4 Pac. 511]; *Taylor* v. *McKinney,* 20 Cal. 619.)

▉ By the judgment for maintenance Mrs. Dwyer was given all the interest in the property which her husband had acquired therein, but no more. Her husband had paid $650 on the purchase price at the time of the attempted assignment and there remained an unpaid balance of $450 and interest. Her remedy against the plaintiff herein, after the entry of the judgment for maintenance, was to compel him to convey the property to her upon her payment to him of such balance. Her answer, however, consists merely of a denial of ownership in the plaintiff, allegations of ownership in herself, and the usual short form of cross-complaint to quiet title in herself. She neither alleges an offer or a willingness to pay the balance which was due upon the contract at the time of the attempted assignment nor asks for a judgment requiring the plaintiff to convey the property to her on condition that she pay such balance, and there is no intimation in the record that she even desires such a judgment. The plaintiff holds the legal title to the property and the appellant holds, at most, the equitable title. She is in a position similar to that occupied by appellant Hannon in *County of Los Angeles* v. *Hannon,* 159 Cal. 37, 47 [112 Pac. 878], where it is said:

"If the appellant Hannon acquired any interest in the lots in question, it was purely an equitable one under the contract of sale between Glassel and Rogers. . . . The appellant is not asserting any rights under the contract of sale. His

answer denies title in plaintiff and alleges that he is the owner in fee of these four lots. In effect his answer is in the nature of a cross-complaint to quiet his alleged ownership of this property in fee. But it is clear that he is not such owner; he has no legal title to it; that is in the plaintiff. While appellant averred in his answer a legal title he proved what is at best an equitable one, and this he seeks to have quieted against the legal title held by plaintiff. It is the settled law, however, that an action to quiet title cannot be maintained by the holder of an equitable title against one holding the legal title.''

Appellant contends that the court erred in permitting the plaintiff, after the close of the evidence, to amend his complaint to conform to the proofs to the effect that he had no knowledge of the marriage relation at the times stated herein. The allowance of the amendment, however, was immaterial, in view of the holding herein that such want of knowledge, under the circumstances stated, adds nothing to the plaintiff's case, and therefore the rights of the appellant were not prejudiced by the amendment.

The judgment is affirmed.

Hughes, J., *pro tem.*, and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 26, 1928.

All the justices concurred.