[No. B032355. Second Dist., Div. Seven. Aug 9, 1989.]

ALHAMBRA REDEVELOPMENT AGENCY, Plaintiff, v.
TRANSAMERICA FINANCIAL SERVICES, Defendant and
Appellant;
FRANCHOT F. FLEMING et al., Defendants and Appellants.

COUNSEL

Robert S. Davis, Stephanie J. Sartoris and Peter Holzer for Defendant and Appellant Transamerica Financial Services.

Shatford & Shatford and Walter T. Shatford III for Defendants and Appellants Franchot F. Fleming et al.

OPINION

JOHNSON, J.—This appeal and cross-appeal arise from an eminent domain proceeding involving a property purchased by respondents Franchot F. and Juanita Fleming (the Flemings) under a land sales contract. Appellant Transamerica Financial Services (Transamerica) was the beneficiary of a trust deed on the property securing a loan Transamerica made to the

seller of the property five years after the Flemings executed the land sales contract.

On appeal, Transamerica argues its security interest entitles it to a portion of the condemnation proceeds equal to the outstanding balance of the loan. This is incorrect. As we explain herein, since Transamerica had notice of the Flemings' land sales contract when it made the loan and obtained the trust deed, its security interest was limited to the seller's interest in the property, that is, the outstanding balance owed by the Flemings under the land sales contract.

On their cross-appeal, the Flemings argue they were entitled to attorney's fees pursuant to Civil Code section 1717. This too is incorrect. By stipulating the condemnation award included any claim for attorney's fees, the Flemings waived any further right to recover any fees from Transamerica.

## STATEMENT OF FACTS AND PROCEEDINGS BELOW

The facts are uncontroverted. On January 2, 1980, the Flemings entered into a land sales contract (the contract) with Gene Berry (Berry) for the purchase of a single family residence. The purchase price was $43,500 payable by monthly payments of $525. The contract was properly recorded on January 4, 1980.

The Flemings occupied the property until the commencement of the eminent domain proceedings. When they first took possession, the house was in poor condition. The Flemings repaired and improved it. Throughout their occupancy, the Flemings made the required payments under the contract.

On October 26, 1985, Berry borrowed $52,049.07 from Transamerica. As part of this transaction, Berry executed a promissory note payable to Transamerica. The note was secured with a trust deed on the property. At the time of the eminent domain proceeding, Berry owed Transamerica an outstanding balance (including accrued interest) of approximately $55,000 on this loan.

On December 10, 1986, the Alhambra Redevelopment Agency filed a complaint in eminent domain to take the property. Berry, the Flemings and

Transamerica were included as defendants having beneficial interests in the property.[1]

By stipulation, the parties agreed the fair market value of the property was $126,375 and to the disbursement of a portion of the proceeds to various persons. The parties further stipulated that the sole issue left for adjudication by the trial court was the division of the remaining condemnation proceeds totaling approximately $67,000.

The trial court awarded Transamerica $11,275.17 which represented Berry's interest in the contract. The balance of the condemnation proceeds were awarded to the Flemings. Transamerica timely appealed.

The Flemings moved for an award of attorney's fee against Transamerica. The motion was denied. The Flemings timely appealed from the denial of the attorney's fees.

## DISCUSSION

### I. TRANSAMERICA'S RIGHT TO THE CONDEMNATION PROCEEDS WAS LIMITED TO BERRY'S INTEREST IN THE CONTRACT.

Transamerica argues it was entitled to have its entire lien satisfied out of the condemnation proceeds rather than being limited to the contract balance owed to Berry. The law, however, is to the contrary.

Transamerica contends the trial court erroneously treated the Flemings as "owners" of the property for purposes of the condemnation proceeding. Instead, the Flemings should only be considered vendees who are limited to recovering the amount they previously paid to Berry under the contract. This argument is meritless.

Contrary to Transamerica's unsupported assertion, a purchaser of real property under a land sales contract is considered an equitable owner of the property and is vested with the right to any condemnation award. "An executory contract to convey has the effect of vesting the equitable estate in the vendee, leaving in the vendor the naked legal title. As the equitable owner of the land, the vendee is entitled to any award which may be made on condemnation of the property." (*Hunt* v. *Inner Harbor Land Co.* (1923) 61 Cal.App. 271, 273 [214 P. 998]; accord *Estate of Reid* (1938) 26

---

[1] Berry failed to appear in the proceeding and he was subsequently dismissed from the action.

Cal.App.2d 362, 369 [79 P.2d 451] ["By the execution of a valid enforceable contract to sell real estate the vendee becomes the equitable owner of the title, subject only to be divested thereof for breach of the contract"]; *Orange Cove Water Co.* v. *Sampson* (1926) 78 Cal.App. 334, 342 [248 P. 526] ["the rule in equity is that by a contract of sale of real property for an adequate and sufficient consideration the vendee acquires an equitable title to such property and thereby becomes the equitable owner"].)

■ In contrast, the seller's rights in the property are extremely limited. As discussed above, the seller only possesses legal title to the property. (*Hunt* v. *Inner Harbor Land Co., supra,* 61 Cal.App. at p. 273.) The seller is considered to be nothing more than a trustee, "holding the land in trust for the purchaser as security for the payment of the purchase price until a conveyance of the legal title to the vendee is finally made." (*Orange Cove Water Co.* v. *Sampson, supra,* 78 Cal.App. at p. 342; see *Estate of Reid, supra,* 26 Cal.App.2d at p. 369 [under a land sales contract, vendor retains "bare legal title, together with a vendor's lien to enforce the terms of the contract, unless it is otherwise expressed in the contract"]; see generally, Annot., Rights and Liabilities of Parties to Executory Contract for Sale of Land Taken By Eminent Domain (1969) 27 A.L.R.3d 572, 581.)

Since the seller's rights in the property are limited to a security interest for the money owed under the land sales contract, his right to encumber or transfer the property is subject to the superior rights of the purchaser. " 'So long as the legal title remains in the vendor [the property] may be conveyed by him, and the conveyance will pass all his right in the land, including, as a general rule, the right in equity to receive the unpaid purchase money and enforce the vendor's lien therefor. . . . If the vendor's grantee is not entitled to protection as a *bona fide* purchaser for value, as where he takes with notice of the existing contract, he will take subject to the equitable rights of the purchaser, and may be compelled . . . to perform the agreement by conveying the land, in the same manner and to the same extent as the vendor would have been liable to do had he not transferred the legal title.' " (*Bone* v. *Dwyer* (1928) 89 Cal.App. 535, 541 [265 P. 292], original in italics; *Day* v. *Cohn* (1884) 65 Cal. 508, 509 [4 P. 511; 54 Cal.Jur.3d, Real Estate Sales, § 324, pp. 437-438; see *Beck* v. *Combs* (1959) 169 Cal.App.2d 583, 586 [337 P.2d 505]; compare *Orange Cove Water Co.* v. *Sampson, supra,* 78 Cal.App. at p. 342 [vendor has no right to encumber land which is the subject of a land sales contract].)

■ As one commentator noted, where the vendee of the land under an executory contract is in possession, and not in default under the contract, "[i]t would seem, . . . that the purchaser is entitled to compensation from

the condemnor for the taking of his equitable interest in the land, and, if the award is greater than the contract price, the vendor should receive the exact amount for which he had agreed to sell the property and the purchaser should be awarded the balance. This rationale is predicated upon the fact that such an executory contract is considered, in effect, an assignment of the award to the purchaser who, in turn, is considered the equitable owner." (2 Nichols, The Law of Eminent Domain (1985), Property and Ownership § 5.03[1], pp. 5-65—5-66, fns. omitted; accord 1 Miller & Starr, Current Law of Cal. Real Estate (1975) § 2:34, p. 266 [where seller encumbers property after executing land sales contract, and encumbrancer has actual or constructive notice of the contract, encumbrancer's lien is subject to the purchaser's equitable estate. If purchaser pays full price of contract, he will take property free of the lien].)

■■■ Here, it is undisputed the Flemings properly recorded the contract, thereby giving Transamerica constructive, if not actual notice of the contract. (Civ. Code., § 1213; 4 Witkin, Summary of Cal. Law (9th ed. 1988) Real Property, § 203, p. 408.) Transamerica, therefore, cannot be considered a bona fide encumbrancer without notice. Accordingly, its rights under the promissory note and trust deed were subject to the Flemings' equitable rights to the property.

Transamerica contends the Flemings will receive a windfall if the condemnation proceeds are not used to satisfy Berry's debt to Transamerica. To the contrary, a converse decision would result in a windfall but that windfall would be to Transamerica.

When Transamerica loaned its money to Berry it accepted as security Berry's right to receive the balance owed under the contract. This amount was far less than the amount loaned. To permit Transamerica to transform an inadequate security interest into a full security interest will place Transamerica in a far superior position than when it originally agreed to make the loan.

In contrast, the Flemings bore the risk of becoming obligated for the full purchase price of their home even if a declining market resulted in the condemnation proceeds being significantly less than the purchase price. (Civ. Code, § 1662, subd. (b) ["If, when either the legal title or the possession of the subject matter of the contract has been transferred, all or any part thereof is . . . taken by eminent domain, the purchaser is not thereby relieved from a duty to pay the price, nor is he entitled to recover any portion thereof that he has paid"].) However, through their own efforts, the Flemings greatly improved the value of their home.

Further, they received no benefit from Transamerica's encumbrance. Indeed, it appears only Berry benefited from that transaction. Under these circumstances, it is disingenuous to assert the Flemings will receive a windfall because they receive the fair market value of their home following condemnation.

Transamerica's argument that the Flemings were only entitled to a lien for the amount paid to Berry under the contract is also meritless. None of the authorities cited by Transamerica support this contention. Indeed, three of the cases relied upon by Transamerica hold to the contrary. (See *Hunt* v. *Inner Harbor Land Co., supra,* 61 Cal.App. at p. 273 [purchaser under land sales contract entitled to condemnation award]; *Mann* v. *Inner Harbor Land Co.* (1923) 61 Cal.App. 799 [214 P. 998]; *Jones* v. *Inner Harbor Land Co.* (1923) 61 Cal.App. 800 [214 P. 998].)

The remaining cases relied upon by Transamerica are wholly inapposite to the instant case. For example, in *Garcia* v. *Atmajian* (1980) 113 Cal.App.3d 516 [169 Cal.Rptr. 845], the Court of Appeal considered whether a purchaser's interest in property encumbered prior to the execution of a land sales contract was subject to future loans made to the seller and secured by preexisting trust deeds. (*Id.* at p. 519.) The court held the purchaser's interest in the property was junior to the precontract liens but senior to any liens made after the execution of the land sales contract. (*Id.* at p. 521.)

As the facts illustrate, the decision in *Garcia* has no application here except to highlight the Flemings' superior interest in the property. The *Garcia* court never considered what impact, if any, an eminent domain action would have on the parties' respective rights or what remedies were available to the purchaser. The other cases cited by Transamerica are even more attenuated from the issue presented here. (See, e.g., *Lloyd* v. *Locke-Paddon Land Co.* (1935) 5 Cal.App.2d 211, 216 [42 P.2d 367] [purchaser may not recover payments made under land sales contract for seller's breach following foreclosure absent a showing seller permitted property to be sold by foreclosure].)

Again disregarding the facts and holding of the case, Transamerica relies upon the decision in *Stratford Irr. Dist.* v. *Empire Water Co.* (1943) 58 Cal.App.2d 616 [137 P.2d 867] to argue it is entitled to have the entire debt satisfied by the condemnation proceeds. In *Stratford,* a bank possessed a lien on the stock of a company which owned certain property subject to an eminent domain action to secure the entire debt owed by the company. The

stock was subsequently transferred to a subsidiary company in trust, thereby eliminating its market value. (*Id.* at pp. 618, 623-624.)

On appeal, the company argued the bank's interest in the condemnation proceeds should be limited to the stock's market value. The Court of Appeal rejected this argument holding that the value underlying the stock was not negated merely because it was placed in trust and the bank's lien extended to the condemnation proceeds. (58 Cal.App.2d at p. 624.)

The most significant distinction between *Stratford* and the instant case is that in *Stratford,* the owner of the property gave the bank full security for its loan and then reduced the value of that security by placing it in trust. In contrast, Transamerica's security was limited at its inception and always subject to the Flemings' equitable rights.

In sum, the trial court properly determined Transamerica's interest in the condemnation proceeds was limited to Berry's right to the outstanding balance owed under the contract. The remainder was correctly awarded to the Flemings.

## II. TRANSAMERICA'S APPEAL IS NOT FRIVOLOUS.

The Flemings requests this court award sanctions against Transamerica for prosecuting a frivolous appeal. Under the facts of this case, we decline to do so.

This court may impose sanctions when an appeal is frivolous or taken solely for purposes of delay. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a).) Courts employ two standards to determine whether an appeal is frivolous. Under the first standard, the court examines the appellant's motives in prosecuting the appeal. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 [183 Cal.Rptr. 508, 646 P.2d 179].) If the appeal was prosecuted solely for purposes of delay, the appeal may be deemed frivolous. (*Ibid.*)

Transamerica had nothing to gain from the delay resulting from the appeal. Unlike ordinary money judgments, the award here was payable from the condemnation proceeds rather than from Transamerica's coffers. We may therefore conclude the appeal was not prosecuted solely for purposes of delay. (31 Cal.3d at p. 651.)

Under the second standard the court evaluates the appeal objectively to determine whether "any reasonable person would agree that the point is totally and completely devoid of merit, . . ." (*Estate of Walters* (1950) 99

Cal.App.2d 552, 558 [222 P.2d 100]; *In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 651.) This standard, by necessity, must be extremely stringent to avoid the chilling effect on litigants' rights on appeal. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.)

Under the objective standard, we cannot conclude Transamerica's appeal was totally void of merit. Although we decline to impose sanctions, we caution both Transamerica and its attorneys against their improper citation of various authorities which do not support the propositions for which they are cited.

### III. THE TRIAL COURT PROPERLY DENIED THE FLEMINGS' REQUEST FOR ATTORNEY'S FEES.

 In their cross-appeal, the Flemings argue attorney's fees should have been awarded pursuant to Civil Code section 1717. We disagree.

 A party may only recover attorney's fees if a contractual provision or statute so provides. (*Wilson's Heating & Air Conditioning* v. *Wells Fargo Bank* (1988) 202 Cal.App.3d 1326, 1329 [249 Cal.Rptr. 553].) There is no dispute the Flemings are not entitled to attorney's fees based upon the statutory scheme governing attorney's fee awards in eminent domain actions. (Code Civ. Proc., §§ 1235.140, 1250.410; *Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 104 [160 Cal.Rptr. 733, 603 P.2d 1329].) Instead, they rely upon Civil Code section 1717 and the attorney's fee provision contained in the trust deed executed by Berry in favor of Transamerica.

Civil Code section 1717 provides "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

 "Ordinarily, in an action on a contract which provides for an award of attorney's fees, the prevailing party in the action is entitled to attorney's fees. . . . This is so even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed." (*Bovard* v. *American Horse Enterprises, Inc.* (1988) 201 Cal.App.3d 832, 842 [247 Cal.Rptr. 340].)

█ A nonsignatory party may recover attorney's fees under Civil Code section 1717 provided the signatory party "would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the [nonsignatory party]." (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83]; see *Saucedo* v. *Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309, 315 [168 Cal.Rptr. 552] ["Civil Code section 1717 was not intended to extend the right to recover attorney fees to persons who themselves could not have been required to pay attorney fees in the event their adversary prevailed in the action"].)

█ The Flemings apparently acknowledge they would not be personally liable for attorney's fees had Transamerica prevailed. However, they argue they would have been indirectly liable for such fees had Transamerica prevailed against the condemnor since any attorney's fee award would come from the condemnation proceeds. This argument is specious.

As the Flemings concede, the parties waived any right to attorney's fees against the condemnor. Therefore, there was no possibility Transamerica could recovery attorney's fees from the condemnation proceeds. Moreover, any attorney's fee award from the condemnor would have been made pursuant to the statutory scheme governing eminent domain proceedings and not because of the attorney's fee provision contained in the trust deed.

The Flemings contend Transamerica's mere request for attorney's fees alone created a reciprocal right in the Flemings to such fees. This is incorrect for two reasons. First, the request for attorney's fees was not directed towards the Flemings but rather the Alhambra Redevelopment Agency.

Second, as discussed above, a reciprocal right is only created where the party alleging he or she is entitled to attorney's fees "*actually* would have been entitled to receive them if he or she had been the prevailing party." (*Leach* v. *Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295, 1307 [230 Cal.Rptr. 553], original italics; see *Reynolds Metals Co.* v. *Alperson, supra,* 25 Cal.3d at p. 129.)[2] Transamerica would not have been entitled to attorney's fees had it prevailed and, therefore, the Flemings were not entitled to attorney's fees. (See *Clar* v. *Cacciola* (1987) 193 Cal.App.3d 1032, 1038 [238 Cal.Rptr. 726] [beneficiary of trust deed was not entitled to

---

[2]The Flemings' reliance upon *Manier* v. *Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503 [207 Cal.Rptr. 508] is misplaced. In *Manier,* the court held Civil Code section 1717 granted the defendants a reciprocal right to attorney's fees since the plaintiffs "would have been entitled to attorneys fees if their complaint had merit, . . ." (*Id.* at p. 508.) This is not the case here.

attorney's fees under Civil Code section 1717 from second beneficiary of separate trust deed on same property in action to determine priority of liens].)

## DISPOSITION

The judgment is affirmed. The Flemings' request for sanctions is denied. Each side is to bear its own costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.