[S. F. No. 9579. In Bank.—June 8, 1921.]

W. N. STRATTON et al., Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[1] PUBLIC UTILITIES—ORGANIZATION OF WATER COMPANY FOR SUPPLYING LAND OWNERS—PRIVATE WATER COMPANY—LACK OF JURISDICTION OF RAILROAD COMMISSION.—Where a land company owning a large tract of land riparian to a river and also owning certain shares of stock in a mutual water company entitling it to receive from such company certain water for its land, before proceeding to sell and subdivide the land, organized a water company and transferred to it what irrigation works had been constructed and its water stock in the mutual company and agreed to finance the new company in the completion and extension of such works, and without transferring its riparian rights to water from the river, which were reserved as part of and appurtenant to the land, authorized and empowered the new company as its agent to divert the water to which the land company was entitled and supply the same to its land at a specified charge per acre, such water was not water devoted to a public use, and the fixing of rates to be charged for such water was not within the jurisdiction of the Railroad Commission.

[2] WATER CORPORATIONS—MUTUAL WATER COMPANY—PRIVATE EN-TERPRISE.—Water taken by a mutual water company and distributed to its stockholders is not taken for a public use, the corporation being simply the joint instrumentality of its stockholders by means of which each diverts and has brought to him the water to which he in his own private right is entitled.

[3] ID.—CHARACTER OF SERVICE—VIEWS OF PARTIES.—In determining whether a water company which is performing a service for a number of people of a certain class and obligates itself to serve those who come within that class is rendering a service to a limited public, or purely private services to each of a number of persons, the view of the parties themselves or the intention with which the company undertook the service may be of weight.

[4] RAILROAD COMMISSION—ORDERS NOT RES JUDICATA.—The Railroad Commission is essentially an administrative and legislative tribunal and not a judicial tribunal in the strict sense, although many of its functions are *quasi* judicial so that its orders are not judgments, and its findings of fact are not adjudications, and facts found by it are not *res judicata,* and as such finally and conclusively established between the parties for all purposes.

[5] ID.—CONCLUSIVENESS OF ORDERS IN COLLATERAL PROCEEDINGS—CHARACTER UNAFFECTED BY STATUTORY PROVISION.—The character of the decrees of the Railroad Commission is not affected by section 65 of the Public Utilities Act, which provides that in all collateral proceedings the orders and decisions of the commission which have become final shall be conclusive, since such provision goes no further than to provide that the orders and decision of the commission are conclusive for the purposes for which they are made.

PROCEEDING in Certiorari to review an order of the Railroad Commission increasing water rates. Order annulled.

The facts are stated in the opinion of the court.

Harris, Johnson, Willey & Griffith, Johnston & Jones and James E. Kelby for Petitioners.

Scarborough & Bowen for Empire Water Company.

Hugh Gordon and William W. Clary for Respondent.

OLNEY, J.—A corporation known as the Empire Water Company had been serving the land owners in a certain tract with water for irrigation at the price of one dollar per

acre per annum.  The company applied to the Railroad Com-
mission for an increased rate, the application was granted
over the objection of some of the land owners, and the latter
have applied to this court for a writ of review annulling the
order of the commission.  The ground on which the writ is
asked is that the relation between the water company and
the land owners is not that of a public utility and consumers,
so that the matter of rates between them is not within the
jurisdiction of the commission.  The question in the case,
therefore, is as to the character of that relation.

It seems that in 1905 a corporation known as the Empire
Investment Company, and which we will hereafter refer to
as the land company, was the owner of a large tract of land
lying on both sides of the Kings River and riparian to it.
As such owner the company possessed the right to the use of
the water of the river on the land.  The company also owned
certain shares of stock in a mutual water company entitling
it to receive from that company certain water for its land.
The land company desired to subdivide and sell the tract,
and to facilitate the doing of this desired to put water upon
the land.  To accomplish this latter object it organized the
water company, transferred to it what irrigation works had
been constructed, agreed to finance it in the completion and
extension of those works, and, without transferring its ripa-
rian right to water from the Kings River, authorized and
empowered the water company as its agent to divert the
water to which it was entitled and supply the same to its
land for an annual charge of one dollar per acre.  The water
company, on its part, issued all of its capital stock to the
land company and agreed to assume the burden of distribut-
ing to the land the water which it was authorized to divert
as the agent of the land company.  The land company also
transferred to the water company its water stock in the
mutual company, the water deliverable by reason of such
stock to be distributed in like manner and under the same
arrangement as the water diverted from the river under the
riparian right.

The arrangement so outlined was made by a deed and writ-
ten contract between the parties.  The deed expressly states
that it is not the intention to convey to the water company
any riparian right, but that such right shall remain a part
of and appurtenant to the land, and the contract recites that

it is the desire of the parties to make a binding and permanent arrangement whereby the system for supplying the land with water may be maintained and water be delivered perpetually to all of the lands of the land company for use thereon by it and by persons succeeding to its title.

The foregoing arrangement having been made, the land company proceeded to subdivide and sell its lands, and succeeded in selling substantially all, or at least substantially all that were irrigable. In making sales, it represented to purchasers that every acre had a perpetual water right attached to it for which no charge in addition to the price of the land was made, and for whose enjoyment an annual charge of one dollar an acre for the purpose only of maintaining the irrigation system was payable. In the sales contracts and deeds the contract between the land and water companies was referred to and it was provided that with each acre went the riparian right to its *pro rata* of the water to which the entire tract was entitled. A number of years after the land had been sold, the water company applied to the Railroad Commission for an order increasing the annual rate of one dollar fixed by its contract, and the commission made the order now under attack.

[1] Such being the facts of the case, it will be noted at once that the water which the water company is engaged in distributing is not water devoted to a public use. The water taken is of two sorts,—that taken under the right given by the ownership of the stock in the mutual water company, and that taken under the riparian right incident to the ownership of the land. [2] It is settled in this state that water taken by a mutual water company and distributed to its stockholders is not taken for a public use, but that such a corporation is but the joint instrumentality of its stockholders by means of which each diverts and has brought to him the water to which he in his own private right is entitled. (See *Thayer* v. *California Development Co.,* 164 Cal. 117, 135, [128 Pac. 21].) As to the water taken by the company under the riparian right, the case is even clearer. The water company did not have even the legal title to such right. It was expressly reserved to the land company and its successors in interest in the ownership of the land, and the water company was avowedly only an agent for making the diversion for the land owners under the riparian right which was

carefully preserved to each. This right, of course, is of a purely private nature. We might add that it is expresssly admitted by counsel in the case before us that none of the water received or taken by the water company and by it distributed to the land owners is water dedicated to a public use.

The fact, then, being that all of the water distributed by the water company is water received or taken by it under private rights, the case comes directly within the authority of *Allen* v. *Railroad Commission,* 179 Cal. 68, [8 A. L. R. 249, 175 Pac. 466] (the Lake Hemet case), and is controlled by it. There, as here, the owner of a large tract of land which he desired to subdivide and sell organized a water company, transferred to it certain water rights, and proceeded through the corporation to divert the water and bring it to the land. He then sold the land, and each purchaser desiring water thereon was required to purchase a "water certificate" from the water company whereby he was entitled to receive a certain amount of water upon the payment of a certain annual rate. The sole question in the case was whether or not the water company in serving the land owners under these circumstances was serving them as a public utility company. It was held that it was not. We see no possible distinction between that case and this. The only differences pointed out are two. The first is that there the water company itself had the legal title to the water rights under which the water was diverted, while here it has not the title to the rights—the riparian rights—under which most of the water is taken. But this difference would seem only to emphasize the private nature of the arrangement. There would seem to be less reason for the view that the service performed by the company is a public service where it consists in taking water for the benefit of a land owner under a private right possessed by him and conveying the water to his land, than where it consists in taking the water under a right possessed by the company itself and distributing that water to the land owner.

The second point of difference pointed out is that in the Lake Hemet case the water company issued to each purchaser of land a water certificate. But this certificate, as the opinion states, merely represented the contract between the water company and the purchasers, and the same function exactly

is served in this case by the contract of the water company with the land company which was made for the express benefit of purchasers from the latter.

The affirmative point advanced to sustain the position of the water company is that the service performed by it is merely that of carrying the water, and that, since it carries the water for all the land owners within a certain district, the service is of a public character. But this very point was likewise advanced in the Lake Hemet case and there denied (179 Cal. 73, [8 A. L. R. 249, 175 Pac. 466]). It might be that under some circumstances, possibly under circumstances closely resembling those of the present case, the carriage of water would be a public service. [3] Where a company is performing a service for a number of people of a certain class, and obligates itself to serve those who come within that class, as is the case here, it is not always easy to determine whether the service is rendered as service to a limited public and therefore a public service, although the class served is but a limited one, or is merely an aggregate of purely private services rendered to each of a number of persons. In such a case, the view of the parties themselves or the intention with which the company undertook the service may well be of weight in determining the true nature of the service. In the present case, it is fairly plain that the water company was not organized and did not enter upon its task of serving the land owners with any intent of doing so as a public utility, but just the contrary. The company, as we have said, was organized in 1905, and in the arrangement which it made with the land company the riparian rights of the land owners were expressly reserved to them, and it was provided that the water company should act only as their agent in diverting the water from the Kings River. Just two years before, this court had decided the case of *Hildreth* v. *Montecito etc. Co.*, 139 Cal. 22, [72 Pac. 395], and the language of the opinion so exactly covers the arrangement made by the water company here, and is so closely followed by the language of the arrangement, that the inference is strong that the arrangement was made with the definite purpose of coming within that language. The court, in *Hildreth* v. *Montecito etc. Co.*, said (139 Cal. 29, [72 Pac. 398]):

"Where a number of persons owning land are each entitled to take water from a common stream or source, for use

upon their respective tracts of land, either by virtue of an appropriation under the Civil Code or by prescription, or as riparian owners, the water right of each is individual and several, and must be considered as private property and not the subject of public use, although the persons so owning interests in the stream are very numerous and their lands include a large neighborhood. Tho owners of such water rights may make a joint diversion, and may carry the water from the point of diversion in a common conduit, made with common funds, and in such a case, in the absence of a special contract to the contrary, they will be the owners in common of the division [diversion] works and conduits; but the respective water rights will remain several and will remain private property. If the persons owning such rights see fit to form a corporation and delegate to such corporation the work of making the diversion and distribution, and of constructing and keeping in repair the dams and conduits, reserving to themselves their rights in the water, as was done in this case, they do not thereby dedicate or appropriate to public use the water thus reserved and used by them. The corporation becomes merely their agent for the purpose of serving their several interests, so far as they may be served by a common system of works, the water remaining the subject of individual ownership and private use as before. This principle was decided in substance in *McFadden* v. *County of Los Angeles,* 74 Cal. 571, [16 Pac. 397], and it was also recognized in *McDermott* v. *Anaheim etc. Water Co.,* 124 Cal. 112, [56 Pac. 779].''

It is perhaps also worthy of note that in the case before us the water company did not agree or hold itself out as ready to transport any and all water for even the limited number of persons it was undertaking to serve. The only water which the company agreed to carry was the water deliverable upon the stock of the mutual water company and that which the land owners as riparian owners had the right to take from the Kings River. In other words, even for the limited class it agreed to serve, the water company did not agree to convey any water that might be offered to it.

Our conclusion, then, is that under the arrangement shown, the relation between the water company and the land owners was private in character and not that of a public utility and consumers. It is urged, however, that any question as to the

character of the relation is concluded by a previous order of the commission, which became final, holding that the water company was a public utility, and that the land owners are estopped from questioning the fact because of their acquiescence in that order, meaning by acquiescence, apparently, merely that the order was not contested and was allowed to become final, for nothing more than this appears. It seems that in 1913 some of the land owners owning lands on the west side of Kings River applied to the Railroad Commission for an order directing the water company to convey to that side of the river and there distribute a *pro rata* proportion of the water received upon the mutual water company's stock, which water had theretofore been distributed only to lands on the east side of the river. The application to the commission was, of course, necessarily based on the assertion that the company was a public utility and for that reason subject to the jurisdiction of the commission. The company denied that it was a public utility, but took the position that the issue was really between east-side and west-side land owners, and that it was not concerned. Certain, at least, of the east-side land owners resisted the application. The commission decided that the company was a public utility, but denied the relief asked for. The claim now is that this decision as to the character of the company is *res judicata*. There is more than one answer to this, but one alone need be given. **[4]** It is that the commission is not a judicial tribunal in the strict sense, although many of its functions are *quasi* judicial, so that its orders are not judgments, and in particular its findings of fact are not adjudications and facts found by it are not *res judicata* and as such finally and conclusively established between the parties for all purposes. The commission is essentially an administrative and legislative tribunal, and not a court. It frequently has to hear evidence and determine for its own guidance questions of fact, just, for example, as a board of supervisors frequently has to do, but that it must do these and similar things as a court does them does not make it a court or change the character of its decrees from administrative or legislative orders into judicial judgments. **[5]** Their character in this respect is not affected by the provision of section 65 of the Public Utilities Act (Stats. 1911 [Ex. Sess.], p. 54), that "In all collateral proceedings the orders and

decisions of the commission which have become final shall be conclusive." There may possibly be some doubt as to just what the full effect of this statutory provision is, but giving it the fullest effect to which it can reasonably be claimed it is entitled, it goes no further than providing that the orders and decisions of the commission are conclusive for the purposes for which they are made. The point here is that they are not made for the purpose of adjudicating between litigants. For example, assuming that the statute should have full effect, it would follow that the previous order of the commission could in no wise be attacked or its operation prevented in the present proceedings. The point is that it is not sought to do this, and our ruling that the water company is not a public utility does not do it. That order stands, and it would stand even if it had been an order directing the company as a public utility to do something. But the operation of the order and its full recognition as a final, existing, and effective order does not involve or mean more as to questions of fact determined by the commission in making the order than that such questions are conclusively determined for the purposes of the validity of the order. If the previous decision of the commission that the water company involved here were a public utility had been necessary for the order which it made, which it was not, that fact, assuming that the fullest effect should be given to the statute, would be deemed conclusively established so far as questioning the validity of the order or its effective operation is concerned, but no further. The peculiar effect of a determination of fact operating to conclude the question for other purposes than those of the very proceeding in which the determination is made is confined to strictly judicial determinations alone, and an order of the commission is not of that character.

As to the contention that the land owners acquiesced in the determination of the commission as to the character of the water company, the answer is that it is wholly immaterial whether they did or not, unless by reason of the commission's order and the acquiescence of the parties in it the relation between the company and the land owners was changed. If the commission had held that the water company was a public utility and then it and the land owners had not only acquiesced in the order, that is, failed to question it, but had

proceeded upon the basis that the company was a public utility, then and there the relation of public utility and consumers would have come into existence between them, regardless of whether it had previously existed between them or not. This, and this alone, is the point of *Franscioni* v. *Soledad etc. Co.*, 170 Cal. 221, [149 Pac. 161], and *Van Hoosear* v. *Railroad Commission*, 184 Cal. 553, [194 Pac. 1003]. Nothing of this sort appears in the present case. The Railroad Commission denied the relief which the west-side land owners asked, so that the company and the land owners proceeded as before under the previously existing arrangement between them, and as a consequence without change in their respective rights or in the relation between them. That relation must, as we have said, be held on the authority of *Allen* v. *Railroad Commission*, 179 Cal. 68, [8 A. L. R. 249, 175 Pac. 466], not to be one of public utility and consumers, and consequently not within the jurisdiction of the commission.

The order of the Railroad Commission is annulled.

Shaw, J., Wilbur, J., Sloane, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Wilbur, J., who was absent.