[Civ. No. 833. Fourth Appellate District.—March 23, 1933.]

EDWARD R. BRALEY et al., Appellants, v. EMPIRE
WATER COMPANY (a Corporation), Respondent.

Clark Clement for Appellants.

O'Melveny, Tuller & Myers and H. Scott Jacobs for Respondent.

BARNARD, P. J.—In January, 1906, the Empire Investment Company, hereinafter called the Land Company, owned some 18,000 acres lying on both sides of the Kings River and riparian thereto, which it desired to subdivide and sell. The Land Company also owned 85⅝ shares of stock in the Lemoore Canal & Irrigation Company, hereinafter called the Canal Company, these shares entitling the owner to certain water in addition to its riparian rights in the river. On January 8, 1906, the Land Company, by grant deed, conveyed to the Empire Water Company, hereinafter called the Water Company, certain described ditches and rights of way therefor, situated upon and used in connection with the lands owned by the Land Company, together with "all other water ditches and canals and interest in water ditches and canals which may now be located upon and existing upon said lands or used in connection therewith and owned by the said first party other than those particularly described; the intention being to convey to said second party all water ditches and parts of water system now existing upon said lands or used in connection therewith and owned by the said first party". This deed acknowledged the receipt of a good and valuable consideration and contained a clause authorizing the Water Company, as agent of the Land Company and its successors in interest, to take the waters of Kings River to which the Land Company's lands should be entitled, and to distribute the same through the "second party's water system" in accordance with an agreement of even date therewith. It further provided that no riparian or other water rights were thereby conveyed, that the same

should remain appurtenant to said lands, and that the Water Company "has only the right to take and distribute the same as aforesaid as the agent of the first party and its assigns and successors in interest". The resolution authorizing this deed provided, among other things, that the Land Company should sell and convey to the Water Company "all ditches, canals, weirs, rights in canals or ditches, and all the necessary rights of way for canals and ditches through its lands in Kings county, and a right of way along Kings river, including a strip of at least forty (40) feet wide on each bank of the river". The acceptance of the deed was authorized by a resolution of the board of directors of the Water Company, in which, after reciting the proposition of the Land Company to exchange the existing water system for all of the capital stock of the Water Company, proceeds: "Now, therefore, be it resolved that this company hereby accepts said proposition and hereby purchases said ditches, water systems and rights of way, and other rights above mentioned; . . . and in payment therefor this company shall issue" all of its capital stock to the Land Company with the exception of one share to each director.

On the same day, the Water Company as first party and the Land Company as second party entered into a contract which, after describing the lands owned by the second party, states that the first party "is the owner of a complete and extensive water distribution system over and through said lands consisting of canals, ditches, pipe-lines, weirs, dams and waterways, which have been constructed and now being extended over said lands, and interest in other canals, controlled by outside parties, and which are hereby referred to as 'auxiliary canals' ", and that both parties mutually desire to create and maintain a binding and permanent arrangement "whereby said water system shall be properly maintained and said water shall through and by means of said system be perpetually delivered and distributed to all of said lands and the subdivisions thereof" for the use of the second party and its successors in interest. This agreement provides that the first party shall furnish water to all of said lands; that the first party shall construct and extend the canals of its water system over said land and locate its auxiliary canals so that it may conveniently furnish and

deliver water to all of said lands; that it shall place proper gates or outlets along its canals at such points as it may designate, which points, however, shall be convenient and practicable for reaching the various subdivisions of land where the water is to be used; that such gates are to be put in when lateral ditches have been constructed "as hereinafter provided"; and that the first party shall maintain its said water system but not including the lateral ditches "hereinafter provided for". It is then provided that the second party shall receive any water desired for said lands or any subdivision thereof at the points of delivery on the first party's canals or auxiliary canals "as above mentioned" and shall, at its own expense, build and construct any ditches which may be necessary to conduct such water from the point of delivery on the canals to the lands where the water is to be used; that the second party and its successors in interest shall thereafter keep and maintain such lateral ditches in good order and repair at their own expense; that the first party shall not be required to deliver any water to any subdivision of said lands until the construction of such branch ditches to receive the same; that the successors in interest of the second party shall pay to the first party $1 per acre per year as water rent or charge for furnishing or delivering the water as agreed; and that this rental or charge shall not be paid by the Land Company so long as it remains the owner of any particular parcel of the land. This contract further provided that the rights and benefits granted and the duties and liabilities imposed upon each purchaser should remain appurtenant to and binding upon each subdivision of the land so sold.

Between 1906 and 1911 practically all of this tract of land was sold by the Land Company. The deed received by each purchaser provided that he should receive with the land "all appurtenances, water and water rights thereunto belonging", but each deed contained the following: "subject, however, to the rights and privileges of the Empire Water Company, and to the terms and conditions of the water agreement executed between the said grantor and the said Empire Water Company, recorded in Book three (3), page (8), of Contracts, Records of Kings County, California".

This action was filed in November, 1928, by a number of purchasers of land in this tract, it being alleged that the action was brought in behalf of all of the successors in interest of the Land Company. The purpose of the action is to have it decreed that the Water Company "holds the mere naked legal title to all the rights, privileges and property described in said deed" of January 8, 1906, and that the same is held in trust for the land owners in this tract. The complaint is based upon the theory that the Water Company was organized by the Land Company for the purpose of aiding in the sale of the land; that the intention of the incorporators was merely to furnish an instrumentality for managing and operating the water department of the Land Company; and that the conveyance of the ditches, canals, weirs and rights of way to the Water Company was made for the use and benefit of the Land Company and its successors in interest, and in trust for them. In a second cause of action, plaintiffs seek to terminate the trust mentioned and to eject the trustee on account of alleged failure to perform its duty to the beneficiaries of the trust.

The court found in favor of the defendant, finding in general that no trust existed in so far as the water distributing system is concerned. Among other things, the court found that it is not true that the ditches and water system described in the deed of January 8, 1906, were held in or under any trust; that the title of the Water Company in the distribution system was an absolute title in fee, subject only to a servitude in favor of the land owners who were entitled to receive water through said distributing system, which servitude constituted an easement appurtenant to the lands; that it was the intention of the incorporators that the Water Company should hold both the legal title and beneficial ownership of said ditches in its own right, subject only to the servitude mentioned; that the covenants and the obligations assumed by the Water Company formed a part of the consideration for the distributing system conveyed to it by the Land Company; and that the remainder of the water system was completed and paid for by the Land Company in accordance with the terms of the contract. The court further found that it was also the intention of the Water Company and all parties concerned that

each purchaser of land in the Empire ranch should receive a beneficial interest and right in said ditch system in order that water might be delivered to his lands, and that it was. the intention that the deed and contract above referred to should constitute one transaction. The plaintiffs have appealed from the judgment entered, it being contended that the findings are not supported by the evidence and that the finding last referred to not only conflicts with the other findings but, in itself, shows that a trust in favor of the land owners was intended and, therefore, resulted.

In considering the sufficiency of the evidence to support the essential findings, we think it appears that the last finding referred to is not inconsistent with the other findings since the beneficial interest the land owners have through their right to be served from the ditch system is not inconsistent with a further right and interest remaining in the Water Company, and, therefore, that point need not be separately discussed. The real question involved is whether or not the situation disclosed by the evidence justifies findings and conclusions to the effect that the general water system involved is not held by the Water Company in trust for the land owners.

The appellants contend that the circumstances conclusively disclose a resulting trust and that the Water Company holds the naked legal title to the distribution system in trust for them as the successors in interest of the Land Company. It is argued that the existence of a resulting trust in all of the water system in favor of the land owners appears from certain evidence indicating that the Water Company was organized by the Land Company as a mere convenience for handling its water department and for the purpose of promoting sales of land; that the Land Company dominated the affairs of the Water Company in practically all its functions until about 1911, when the land was all sold; that admissions were made by certain officials of the Land Company and the Water Company subsequent to the execution of the deed and contract tending to show that a trust was intended; and that this further appears from the provisions of the deed and contract in question. In addition, appellants particularly rely upon the case of *Quist* v. *Empire Water Co.*, 204 Cal. 646 [269 Pac. 533], in which it was held, in considering the same deed and contract in-

volved here, that title to the 8⅝ shares of the capital stock of the Canal Company was held by the Water Company in trust for the land owners. It is argued that the ditch system here in question was transferred to the Water Company under the same conditions and for the same purposes as the shares of stock in the Canal Company, that the water and water right represented by the canal stock are useless without the means of distribution and, therefore, it must follow that the distribution system is also held by the Water Company in trust for the land owners. In the Quist case it was held that the Water Company had no interest or title in the water represented by the shares in the Canal Company other than the right given to divert and distribute these waters to the lands entitled thereto. While not a part of the holding therein, even in that case, the fact that the Water Company had an interest in the water distributing system apart from any interest in the shares of stock in the Canal Company, an interest which they might desire to sell and convey, is recognized and stated to have been apparently contemplated when a certain clause was used in the contract.

■ It does not necessarily follow from the ownership of water rights in connection with certain land that the land owner has the same ownership, either legal or equitable, in the distributing system by which this water is brought to the land. In *Allen* v. *Railroad Com.*, 179 Cal. 68 [175 Pac. 466, 468, 8 A. L. R. 249], the court said:

"The distributing system is a species of real property. (*Stanislaus Water Co.* v. *Bachman*, 152 Cal. 716, 726 [15 L. R. A. (N. S.) 359, 93 Pac. 858].) The right of a land owner to receive water not devoted to public use upon land for its benefit, from an outside source, through a system of canals or pipes for conducting it to the land, is an easement attached to the land and a corresponding servitude upon the source of supply and the distributing system."

In *Stratton* v. *Railroad Com.*, 186 Cal. 119 [198 Pac. 1051, 1054], a case involving the same water system now under consideration, the court quoted as follows from an earlier case:

" 'Where a number of persons owning land are each entitled to take water from a common stream or source, for use upon their respective tracts of land, either by virtue of

an appropriation under the Civil Code or by prescription, or as riparian owners, the water right of each is individual and several, and must be considered as private property and not the subject of public use, although the persons so owning interests in the stream are very numerous and their lands include a large neighborhood. The owners of such water rights may make a joint diversion, and may carry the water from the point of diversion in a common conduit, made with common funds, and in such a case, in the absence of a special contract to the contrary, they will be the owners in common of the division [diversion] works and conduits; but the respective water rights will remain several and will remain private property. If the persons owning such rights see fit to form a corporation and delegate to such corporation the work of making the diversion and distribution, and of constructing and keeping in repair the dams and conduits, reserving to themselves their rights in the water, as was done in this case, they do not thereby dedicate or appropriate to public use the water thus reserved and used by them. The corporation becomes merely their agent for the purpose of serving their several interests, so far as they may be served by a common system of works, the water remaining the subject of individual ownership and private use as before.' "

The fact that a corporation acts as agent for the land owners in delivering water is by no means conclusive that the principals are complete owners of the instrumentalities used in carrying out the agency agreement or that they may take over these instrumentalities without compensating the agent therefor. ▉ In the case at bar, the Land Company, while owning the land and the water rights, and before these plaintiffs acquired any interest in either, formed such a corporation and turned over to it a distribution system together with the right and duty of diverting and distributing the water. The conclusion is justified that the situation thus created was not a resulting trust but a matter of contract, the rights of the parties being expressed in the terms of the agreement, and that the corporation so formed took over the property conveyed to it subject to the rights and obligations created by the contract, including the right of the land owner to the service agreed to be rendered. In actual practice in the irrigated sections of this state, water

distributing systems have frequently been owned and operated by corporations and property rights in such a system, separate and apart from a land owner's water rights and right to service from the system, have always been recognized. In many instances the land owners, after organizing an irrigation district, have purchased and paid large sums for such distributing systems. In this case the deed conveying the water system from the Land Company authorized the Water Company as agent of the Land Company and its successors in interest, to take the water from Kings River and "to distribute the same through the said second party's water system" in accordance with the agreement executed on the same day. This contract not only provides that the Water Company shall deliver the water to certain points it may designate which shall be convenient to the various subdivisions of the land and that it shall maintain the water system of which the contract declares it is the owner, but the contract further provides that the land owner shall pay for this service and in addition shall construct and maintain his own lateral ditches without expense to the company.

The contract recognizes a continuing interest in the Water Company in the property conveyed by the deed and a continuing obligation on the part of purchasers of land in the tract to pay for the delivery of water, and instead of indicating an intention that the system is to be turned over to the land owners when the tract is all sold, it is expressly stated that the purpose is to make a permanent arrangement not to be changed except by a written instrument executed by all of the parties thereto, their successors or assigns. This contract was not only recorded but each purchaser accepted title to his land subject thereto. While the appellants rely on claimed admissions subsequently made by officials of the Water Company and of the Land Company, these can be of value only as throwing light on the original intention of the parties. Irrespective of any other evidence, the instruments executed at the time sufficiently evidence the lack of any intent to convey the distributing system to the Water Company in trust for the Land Company to support the judgment. (*Lezinsky* v. *Mason Malt etc. Co.,* 185 Cal. 240 [196 Pac. 884].)

■ The appellants further urge that they paid the consideration for the transfer made to the Water Company since the Land Company used part of the proceeds from the sale of its lands in extending the ditch system so that water could be brought to all parts of the tract. Any extensions made would seem to have been made in accordance with the contract. The amounts paid by purchasers of land in the tract formed no part of the consideration for the prior conveyance to the Water Company. The consideration for that transfer was, as found by the court, all of the stock in the Water Company and the assumption by that company of certain obligations. This consideration moved from the Water Company and was received by the Land Company, not paid by it. In *Fulton* v. *Jansen,* 99 Cal. 587 [34 Pac. 331, 332], the rule is thus stated: "In order to raise such resulting trust, by payment of the purchase-money, it is essential that the payment be actually made by the beneficiary, or that an absolute obligation to pay should be incurred by him, 'as a part of the original transaction of purchase, at or before the time of the conveyance; no subsequent and entirely independent contract, intervention, or payment on his part would raise any resulting trust'. (Pomeroy's Equity Jurisprudence, sec. 1037).''

Most of the evidence relied upon by appellants tends to show certain misrepresentations made by the Land Company in selling land to them and their predecessors, rather than to show the existence of such a trust as is here claimed. In any event, not only did they take title to their respective lands subject to a particular situation then existing and expressly referred to in their deeds, but nothing is here pointed out that does more than create a conflict. In our opinion, the finding to the effect that the distributing system described in the deed of January 8, 1906, was not conveyed to the Water Company in trust for the land owners in this tract is sustained by the evidence.

■ Complaint is made of the failure of the trial court to make findings in reference to the issues raised in the allegations of the second cause of action and the answer thereto. The second cause of action related to the removal of the trustee for failure to perform its duty under the trust and, if the judgment rendered upon the first cause

of action is correct, and no trust existed, these matters became immaterial.

For the reasons given the judgment is affirmed.

Marks, J., and Jennings, J., concurred.