WASTE, C. J.
This is an action for declaratory relief by which it is sought to have interpreted and made certain the provisions of a contract relative to the water and water rights represented by shares of stock in a mutual water company. From a decree construing the same favorably to the defendants, the plaintiffs have appealed.
It appears that in 1905 a corporation known as the Empire Investment Company, hereinafter referred to as the land company, was the owner of a large tract of land in Kings County, containing in excess of 18,000 acres and lying on both sides of the Kings River and riparian to it. As a riparian owner the land company possessed the right to its proportional share of the water of the river. In addition, the land company also owned 8% shares of stock in the Lemoore Canal and Irrigation Company, a mutual water company, which ownership entitled it to receive from that company a specified quantity of water for use on its lands. In order to facilitate a proposed subdivision and sale of the lands, the land company organized the defendant Empire Water Company and transferred to the latter its irrigation works and, without transferring its riparian right, authorized and empowered the water company as its agent to divert the riparian water to which it was entitled and supply the same to its lands, in accordance with the terms of a contemporaneously executed agreement, for an annual charge of one dollar an acre. The land company also transferred to the water company its 8% shares of stock in the Lemoore mutual water company, as agent or trustee, for the purpose of distributing the water represented thereby in accordance, likewise, with the provisions of the contemporaneously executed agreement.
The arrangement so outlined was made by a deed and written contract, bearing date of January 8, 1906, between the land company and the water company. It is expressly provided in the deed that it is not the intention to convey to the water company any riparian right, but that such right shall remain a part of and appurtenant to the lands. The contract recites that it is the desire of the parties to make a binding and permanent arrangement whereby the system for supplying the lands with water may be maintained, and water be delivered perpetually to all of the lands of the land company for use thereon by it and by persons succeeding to its title. Upon completion of this arrangement, the land *379 company proceeded with its subdivision project and succeeded in selling substantially all of its lands. Reference was made in the sales contracts and deeds to th'e aforesaid contract between the land and water companies.
No question here arises as to the distribution of the riparian water among the numerous purchasers. The sole issue concerns the distribution of the so-called Lemoore water represented by the 8% shares of stock in the mutual water company. It is the contention of the plaintiffs and appellants, all of whom own portions of the original ranch lying on the west side of the Kings River, that said Lemoore water, like the riparian water, was intended to be, and is, distributable ratably to both west and east side owners. The defendants and respondents all of whom are east side owners, contend, on the other hand, that the Lemoore water, unlike the riparian water, was intended to be, and is, distributable exclusively to those lands lying on the east side of the Kings River. The solution of this controversy, obviously, turns upon a construction of the provisions of the 1906 contract between the land and water companies. As already stated, the trial court construed the same in accordance with the contention of the respondents, or east side owners.
In passing, it should be stated that this action is representative in character, the appellants and respondents representing, respectively, all west and east side owners. It should also be stated that other actions have been prosecuted from time to time in which various provisions of the deed and contract between the land and water companies have been, either directly or indirectly, brought before the courts for consideration. (Stratton v. Railroad Com.., 186 Cal. 119 [198 Pac. 1051]; Quist v. Empire Water Co., 204 Cal. 646 [269 Pac. 533]; Braley v. Empire Water Co., 130 Cal. App. 532 [20 Pac. (2d) 75].) None of such actions involved the precise point here presented and, therefore, any reference therein to the same was wholly unnecessary to the disposition of such actions and oloiter.
Respondents, however, refer us to the so-called Ferrasei proceeding instituted in 1913 before the railroad commission of this state by certain west side owners to have it determined that they, as well as east side owners, were entitled to share in the ratable distribution of the Lemoore water, here in dispute. That proceeding, involving the identical *380 issue here presented, was directed against the water company but many east side owners intervened.
The commission, after hearing, ruled, as did the trial court herein, in favor of the east side owners who, as respondents upon this appeal, now cite said ruling, which failed to come under the scrutiny of the courts by way of writ of review or otherwise, as res judicata of the present controversy. Appellants contend, on many grounds, that the order of the railroad commission is not determinative or res judicata of the present controversy.
We find it unnecessary to pass upon the point for in our opinion, and contrary to appellants’ contention, the evidence herein is sufficient to support the finding of the trial court that it was the intention of the parties to the 1906 contract that the Lemoore water was to be used on and distributed to the east side lands to. the exclusion of the west side lands, other than when available to the latter as surplus or waste water. In so concluding, we are aware of appellants’ evidence to the effect that when they purchased their west side lands they did so in reliance upon representations that the Lemoore water, like the riparian water, was to be ratably distributed to the lands on either side of the river. However, and over against this evidence, there exists the very clause in the 1906 contract between the land and water companies, the indefiniteness in which gives rise to this action, to the effect that the Lemoore “water may be delivered and distributed through said system to a part of said lands for all or any of said purposes. ’ ’ While the agreement does not expressly declare to what part of the lands the Lemoore water is to be delivered, it does contain an additional clause to the effect that “it is understood that all of said lands cannot be supplied from any one canal, but that subdivisions thereof will be supplied only from the canal from which water can be carried by gravitation to such subdivisions, and that [the water company] is only required to deliver water by gravitation . . . ”• The record before us indicates, and the trial court found, in substance, that within the conception of the contract, the canals through which the Lemoore water will flow by gravity are all located on the east side of the river. This is also indicated in the petition, already referred to, filed by certain of the west side owners before the railroad commission in 1913 wherein it was alleged “that the Lemoore Canal and Irrigation Company’s canal and ditches *381 and irrigation system, and all thereof, are situate on the East side of said Kings River”. In addition, the record indicates, and the court found, that the Lemoore water for many years has been used in irrigating lands on the east side of the river. This latter fact is also attested to by the unsuccessful 1913 effort of certain of the west side owners to procure from the railroad commission an order directing ratable distribution of Lemoore water to them. These attendant and surrounding circumstances, and the inferences deducible therefrom, may properly be considered in arriving at a conclusion as to the intent of the contracting land and water companies when, in their 1906 agreement, they provided that the Lemoore “water may- be delivered and distributed ... to a part of said lands . . . ”. They indicate that the east side lands are the “part of said lands” intended.
Moreover, there is before us the testimony of the engineer who laid out the canals for the land company wherein he stated that there are about 3,500 acres of east side lands that cannot be served with riparian water by gravity, thus leading to the construction in 1905-1906 of a series of laterals or canals to carry Lemoore water by gravity to said east side lands. This fact undoubtedly influenced the contracting parties in 1906 to provide that the Lemoore water may be distributed “to a part” of the lands and warrants the construction given to said contract and phrase by the court below, viz., that the “part” of the lands intended were situate on the east side of the river.
The ditch tender for the Lemoore canal company testified, among other things, that there are two distinctive canal systems on the Empire ranch; that they were distinctive in the sense of distributing distinctive sources of water supply (riparian and Lemoore); and that the canal system on the west side of the river, where appellants’ lands are located, indicates that it was not adapted for the distribution of Lemoore water. The court below made findings to this effect.
Other evidence might be referred to but we are of the view that sufficient has been said to indicate the propriety and reasonableness of the trial court’s construction of the 1906 contract in a manner to cause the Lemoore water to be distributable exclusively to east side lands, other than when *382 available to west side lands as surplus or waste water. There is support in the evidence for the trial court’s award of surplus Lemoore water to the west side lands, which award, in our opinion, explains what the appellants refer to as an inconsistency in the findings.
In addition, we are satisfied that there is ample evidence to support the lower court’s finding that the appellants are chargeable with laches in the prosecution of the claim or asserted right relied on herein. As already stated, the contract between the land and water companies was executed January 8, 1906. The testimony of some of the appellants’ own witnesses indicates that since that time there has been a continual controversy between the west and east side landowners over the Lemoore water, the former making yearly demands therefor. One of the appellants’ witnesses testified that the east side landowners denied that the west side landowners had any right to the Lemoore water. This evidence, coupled with the inactivity of the west side landowners from the time of the order of the railroad commission in the Ferrasci case (1915) purporting to award said Lemoore water to the east side landowners, whether res judicata or not, discloses an inexcusable apathy and tardiness of the appellants in the prosecution of any claim or right they may have had under the 1906 contract, in and to the Lemoore water and supports the finding of laches made against them. It must be concluded that by the commencement of this action on December 21, 1934, the appellants were seeking to prosecute, at best, a stale claim.
The trial court found in favor of respondents on other defenses advanced by them. In view of the conclusions already announced, it is unnecessary to consider or pass upon such other defenses urged by the respondents and the findings thereon, including the defense and finding that the order of the railroad commission in the Ferrasci proceeding is res judicata of the present controversy. The findings on said defenses may be disregarded as surplusage. (Baird v. Ocequeda, 8 Cal. (2d) 700 [67 Pac. (2d) 1055]; Epstein v. Gradowitz, 76 Cal. App. 29, 31 [243 Pac. 877].)
We cannot agree that an estoppel exists against the respondents by reason of their inactivity during the construction by the appellants of a siphon intended, reputedly, to carry Lemoore water. The trial court properly found that *383 said siphon was constructed on a right of way belonging to the appellants; that no invasion of any rights of respondents resulted therefrom; that no cause of action arose thereby to the respondents; and that none of the Lemoore water was at any time transported through said siphon.
Other points not herein mentioned present nothing of merit.
The judgment is affirmed.
Shenk, J., Langdon, J., Edmonds, J., and Seawell, J., concurred.