[Civ. No. 3086. Fourth Dist. May 19, 1943.]

STRATFORD IRRIGATION DISTRICT, Plaintiff and Respondent, v. EMPIRE WATER COMPANY, Appellant; SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Corporation), Defendant and Respondent.

H. Scott Jacobs for Appellant.

Harris, Willey & Harris, Ronald B. Harris and Dearing & Jertberg for Respondents.

MARKS, J.—This is an appeal from a judgment condemning certain property of the Empire Water Company for the sum of $35,000, approximately $20,000 of which was ordered paid to the Security-First National Bank of Los Angeles, and the balance to the Empire Water Company. We will refer to the Stratford Irrigation District as the district; to the Empire Water Company as the company, and to the Security-First National Bank of Los Angeles as the bank.

The district is an irrigation district organized and existing under the laws of the State of California. Its boundaries include the land to which water was conveyed by the system owned by the company, which also owned 85/8 shares of stock of the Lemoore Canal and Irrigation Company. This, with other stock was pledged to the bank to secure a loan of approximately $20,000.

The factual background of this litigation has been set forth at length in other cases so it will not be necessary to detail it here. (See *Stratton* v. *Railroad Commission*, 186 Cal. 119 [198 P. 1051]; *Quist* v. *Empire Water Co.*, 204 Cal. 646 [269 P. 533]; *Empire W. S. Irr. Dist.* v. *Stratford Irr. Dist.*, 10 Cal.2d 376 [74 P.2d 248]; *Braley* v. *Empire Water Co.*, 130 Cal.App. 532 [20 P.2d 75]; *Stratford Irr. Dist.* v. *Empire Water Co.*, 44 Cal.App.2d 61 [111 P.2d 957].) It should be sufficient to say that in 1905 the Empire Investment Company owned a large tract of land in Kings County lying on both sides of the Kings River and riparian to it, as well as 85/8 shares of stock in the Lemoore Canal and Irrigation Company, a mutual water company. The Empire Investment Company desired to subdivide and sell its land and organized the Empire Water Company to which it transferred all of its irrigation works and the Lemoore Canal and Irrigation stock in January, 1906. A contract was executed between the two corporations under which the company agreed to maintain the irrigation and distribution works and deliver water to the lands for the sum of one dollar per acre per year. None of the riparian water rights were transferred to the company. It has been held that under this contract the company holds title to the Lemoore Canal and Irrigation Company stock in trust for the riparian owners. (*Quist* v.

*Empire Water Co., supra.*) All deeds to lands in this tract were made subject to the provisions of this contract under which the company is still delivering water to the land owners.

The company filed its petition with the Railroad Commission asking it to fix rates for delivery of water to the land owners. The petition was granted but the order of the commission was annulled in the case of *Stratton* v. *Railroad Commission, supra.* It was there held:

"That the water which the water company is engaged in distributing is not water devoted to a public use. The water taken is of two sorts,—that taken under the right given by the ownership of the stock in the mutual water company, and that taken under the riparian right incident to the ownership of the land. It is settled in this state that water taken by a mutual water company and distributed to its stockholders is not taken for a public use, but that such a corporation is but the joint instrumentality of its stockholders by means of which each diverts and has brought to him the water to which he in his own private right is entitled. (See, *Thayer* v. *California Development Co.,* 164 Cal. 117, 135 [128 P. 21].) As to the water taken by the company under the riparian right, the case is even clearer. The water company did not have even the legal title to such right. It was expressly reserved to the land company and its successors in interest in the ownership of the land, and the water company was avowedly only an agent for making the diversion for the land owners under the riparian right which was carefully preserved to each. This right, of course, is of a purely private nature."

It is now urged that the district cannot condemn the works of the company because it is established that those works are not dedicated to a public use which is the only purpose for which the right of eminent domain may be invoked. If this is true, it must be conceded that the judgment must be reversed. (Sec. 1, art. XIV Const.; *McFadden* v. *Board of Supervisors,* 74 Cal. 571 [16 P. 397]; *Thayer* v. *California Development Co.,* 164 Cal. 117 [128 P. 21]; *Franscioni* v. *Soledad Land & Water Co.,* 170 Cal. 221 [149 P. 161].)

This identical argument was made to this court on a former appeal (44 Cal.App.2d 61 [111 P.2d 957]) and was thus disposed of:

"Eminent domain is the right of the people or government to take private property for public use, and the complaint

must show that the use for which the property is to be taken is a public use, so declared by the legislature. (*Northern Light etc. Co.* v. *Stacher,* 13 Cal.App. 404 [109 P. 896]; 10 Cal.Jur., p. 397, sec. 99.) The legislature has declared in section 61b, Act 3854, Deering's General Laws 1937, volume 1, page 1843, that '. . . irrigation districts may acquire, by . . . condemnation, the irrigation system, canals and works through which lands in such districts have been or may be supplied with water for irrigation, or other property necessary or proper for the purposes of the district . . . or for the capital stock of any corporation owning such system or other property . . . subject to any liens, encumbrances or obligations thereon . . .' (See also sec. 15 of said act.)

"It is therefore the general rule that an irrigation district may acquire by condemnation a system of canals and water works and may purchase or condemn an existing water system, in which case it takes subject to the rights of existing consumers, whether such rights exist by virtue of a contract or dedication of the system for use in connection with certain lands. (26 Cal.Jur. p. 404, sec. 632; *Lindsay-Strathmore Irr. Dist.* v. *Wutchumna Water Co.,* 111 Cal.App. 688 [296 P. 933].)

"Section 17 of the act provides that 'The use of all the water required for the irrigation of the lands in any district formed under the provisions of this act . . . for . . . beneficial uses, within such district, together with the rights of way for canals and ditches, sites for reservoirs, and all other property required in fully carrying out the provisions of this act is hereby declared to be a *public use* . . .' (Italics ours.) It has been held that where the legislature declares a particular use to be a public use the presumption is in favor of its declaration and the courts will not interfere therewith unless the use is clearly and manifestly of a private character. (*County of San Mateo* v. *Coburn,* 130 Cal. 631 [63 P. 78, 621]; *Contra Costa Coal Mines R. R. Co.* v. *Moss,* 23 Cal. 323; 20 C.J., p. 551, sec. 38.)

"Section 1241, subdivision 2, of the Code of Civil Procedure, provides that before property can be taken it must appear that the taking is necessary to a use authorized by law, and it is further provided that when the board of directors of an irrigation district shall by resolution have found and determined that a public interest and necessity require the acquisition and that the property described in such resolution is necessary therefor, such resolution shall be conclusive

evidence of the public necessity, except in the case of the taking of property located outside of the territorial limits thereof. (*County of Los Angeles v. Rindge Co.*, 53 Cal.App. 166 [200 P. 27]; *San Benito County* v. *Copper Mountain Min. Co.*, 7 Cal.App.2d 82 [45 P.2d 428].)

"However, the mere declaration by the legislature of a purpose for which property may be taken for a public use is not conclusive and does not preclude a person whose land is being condemned from showing upon the trial that, as a matter of fact, the use sought to be subserved is a private one, or from assailing the complaint on the ground that it so appears therefrom. The character of the use and not its extent, determines the question of public use." (See, also, *Laguna Drainage Dist.* v. *Charles Martin Co.*, 144 Cal. 209 [77 P. 933]; *Lux* v. *Haggin*, 69 Cal. 255 [4 P. 919, 10 P. 674]; *Housing Authority* v. *Dockweiler*, 14 Cal.2d 437 [94 P.2d 794]; 10 Cal.Jur. 300, sec. 16, and cases cited.)

We have before us in the evidence the resolution of the board of directors of the district which recites "that public interest and necessity requires the acquisition by said irrigation district of the distribution system of the Empire Water Company, which serves lands within said district, . . ." The contract of January, 1906, is also before us. The trial court found that ". . . the acquiring of the properties hereinbefore listed, and rights of way for ditches and structures appurtenant thereto, are for a public use and benefit." We are pointed to no evidence bearing on the question of public use other than the water contract of January, 1906. It seems that the company is relying on this contract and the decision in the case of *Stratton* v. *Railroad Commission, supra,* to establish that the proposed taking is for a private and not a public use.

Assuming, but not holding, that the foundations for the arguments of the company are sound, and that delivery of riparian water to the land owners is a private use, it does not follow that the works sought to be condemned may not be put to a public use as well. The contract does not limit the use of the works and canals to the single purpose of delivering riparian water to the land owners. ▪ A mutual water company may have the right to conduct its water through the ditch of a public utility without affecting the public use of the ditch by the utility. (*Wallace Ranch Water Co.* v. *Foothill Ditch Co.*, 5 Cal.2d 103 [53 P.2d 929].) ▪ There is noth-

ing in the record to force the conclusion that the principal, if not the predominant, use to which the works sought to be condemned will be put by the district, will be private and not public. Nor is there anything to require us to conclude that conveying riparian water to the land owners may not be a use merely incidental to the principal public use if it be finally held, when the matter is presented, that such incidental use is private. Under such circumstances the finding of the trial court that a public use is involved has sufficient support in the declaration of the Legislature and the resolution of the board of directors of the district of the public use which are not overcome by the terms of the water contract.

The company relies strongly on the case of *Bent* v. *Second Extension Water Co.,* 51 Cal.App. 648 [197 P. 657]. While that case may be factually similar to the instant case in some respects, there is nothing in it contrary to the conclusion we have just reached. Bent owned stock in the Second Extension Water Company which was appurtenant to his land. The Second Extension Water Company sold all its water, water rights and physical property to the Alpaugh Irrigation District which failed to furnish water to Bent, causing him damage. He recovered judgment for that damage which was affirmed on appeal. The instant case has not reached the point of determining the rights of the riparian owners, as against the district, under the water contract of January, 1906. That question cannot arise until the works of the company are acquired by the district.

It is argued by the company that the district cannot maintain the action without joining all of the land owners receiving their riparian water through the works sought to be condemned. This argument is based on the provisions of subdivision 2 of section 1244 of the Code of Civil Procedure which provides that all known owners or claimants of property sought to be condemned must be named in the complaint as defendants. The same argument was made and held to be without merit on the former appeal. (44 Cal.App.2d 61 [111 P.2d 957].) The further observation may be made that the district is not attempting to condemn any of the property or water rights of the individual land owners, so they should not have been joined as defendants. No issue can arise in this action between them and the district.

In describing the property sought to be condemned in the complaint, the district used 24 paragraphs, each describing a part of the property. The judgment awarded a

lump sum of $35,000 to the company and the bank, and the trial court did not fix the value of any of the various parcels described in the complaint, the findings and the judgment. It is argued that this constitutes reversible error, as it violates the provisions of subdivision one of section 1248 of the Code of Civil Procedure which requires the court to ascertain and assess the value of each parcel taken, if the property taken consists of different parcels.

The trial court found ''That it is true that all of said properties described are integral parts of the whole of a diversion and distributing system which serves the lands of the Stratford Irrigation District with water, and although described by units are not severable from the whole.'' This finding is supported by evidence.

We believe this sufficiently answers this argument of the company. If the property sought to be condemned constituted a single unit operated as an indivisible whole and belonging to one owner it might well be regarded as a single parcel and might have been described as such. The method of description employed should not be held to change this situation. If a right of way was sought to be condemned across a section of land belonging to one owner and operated as one tract, the fact that the complaint described the property as four quarter sections instead of one entire section would not compel the trial court to separately assess the value of the property taken in each quarter section.

The company argues that there is no evidence supporting the amount of the award. The evidence of the experts of the district placed the market value of the property to be condemned at $20,000. They testified that the interest of the company in the Lemoore Canal and Irrigation Company stock had no market value as it consisted of merely the legal title which was held in trust for the land owners. They were of the opinion that this stock would have had a value of about $6,000 per share had it been free from the trust. The expert for the company placed a value of upwards of $150,000 on the property sought to be condemned. The trial court fixed the value at $35,000. As the amount awarded differed from the evidence of value given by both sides, it is argued there is no evidence supporting the award. This precise argument was rejected in *Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co.*, 128 Cal.App. 743 [18 P.2d 413], where it was said: ''There is usually a sharp conflict in the evidence relating

to market value in condemnation proceedings. The estimates given by the witnesses for the owners are ordinarily found to be in excess of the estimates given by the witnesses for the condemnor. In such cases the trial court, after weighing all of the evidence, frequently fixes the market value at a sum between the varying estimates of the witnesses for the respective parties. . . . The fact that the trial court did not view the premises and did not fix the market value at a figure testified to by any witness is entirely immaterial."

The company argues that the trial judge should have found the market value of the Lemoore Canal and Irrigation Company stock and should have awarded the bank no more than this value to be applied on its loan. This stock, and the stock of other companies, among which were 1991.80 shares of stock of the company out of a total of 2,000 shares issued, were pledged to secure the loan.

While it may be that there was originally some defect in the pledge to secure the debt, the bank was an innocent party, and that defect is not urged here nor has it been urged in any of the other reported cases dealing with the affairs of the company. All of the stock pledged was security for the entire debt, as was each share pledged. The stock of the Lemoore Canal and Irrigation Company could have been redeemed from the pledge only by payment of the entire debt. When the judgment is paid the lien of the bank will extend to the money paid. (*Los Angeles etc. Bank* v. *Bortenstein*, 47 Cal. App. 421 [190 P. 850].) The larger source of the supply of water used to irrigate the lands on the east side of Kings River, formerly a part of the Empire Ranch, lies in the ownership of this stock. While the naked legal title to this stock now in the company may have no market value because of the trust, the right to use that water is of great value to the land owners, and might be lost were the pledge foreclosed. As the bank had a lien on that stock to secure all of its debt, we can see no good reason why its debt should not be paid in the manner provided in the judgment. (*Los Angeles etc. Bank* v. *Bortenstein, supra.*)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 15, 1943.